Herbert D. CLARK,

v.

Charles GEIGER, and New Amsterdam
Casualty Co., Appellants,

v.

ATWELL, VOGEL & STERLING, INC.,
Appellee.

Nos. 14703, 14704.

United States Court of Appeals
Third Circuit.

Argued May 7, 1964.

Decided Sept. 4, 1964.

See also D.C., 31 F.R.D. 268.

Walter T. Darmopray, Philadelphia,
Pa. (Perrin C. Hamilton, Hamilton,
Darmopray & Malloy, Philadelphia, Pa.,
on the brief), for appellant Charles
Geiger.

John B. Martin, Philadelphia, Pa.
(Duane, Morris & Heckscher, Philadel-
phia, Pa., on the brief), for appellant
New Amsterdam Cas. Co.

Thomas F. Devine, Philadelphia, Pa.
(M. Melvin Shralow, Folz, Bard, Kams-
ler, Goodis & Greenfield, Philadelphia,
Pa., on the brief), for appellee Atwell,
Vogel & Sterling, Inc.

Before McLAUGHLIN, STALEY and
HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This appeal is solely concerned with
the third-party action of the defend-
ants-appellants against the third-party
defendant-appellee.

Clark, the original plaintiff, had been
employed as an auditor by appellant, New
Amsterdam Casualty Co. in Philadelphia,
Pennsylvania for nine years prior to
1957. His supervisor in that position
was appellant Geiger. In 1957 Clark
moved to Florida and in September of
that year made application for a similar
situation with appellee Atwell, Vogel &
Sterling, Inc. He dealt with T. W. Sad-
ler, Atwell's Vice President in Atlanta,
Georgia. Sadler considered Clark for a

post centering in Jacksonville, Florida. He wrote Clark's former employer, the New Amsterdam, for information regarding Clark. He had a reply from a company executive and then wrote Geiger direct for more information. Geiger answered by a letter which Clark claimed defamed him and thereupon sued Geiger and the latter's employer. That suit was started in the Philadelphia Common Pleas Court and was removed to the United States District Court for the Eastern District of Pennsylvania because of diversity of citizenship. As the action was approaching trial, Geiger and New Amsterdam filed the third-party claim now before us against Atwell, Vogel & Sterling, Inc. The basis of this was that the latter had disclosed admittedly confidential information to Clark in breach of its agreement with New Amsterdam and Geiger.

The third-party cause was severed from the Clark litigation because it would have unduly delayed the Clark trial. That matter was tried. Inter alia, Clark submitted proof of permanent mental illness as a result of the acts of Geiger and New Amsterdam. He was awarded a jury verdict of $21,000.

In this third-party action Clark was appellants' all important witness. He would not come to Philadelphia for the trial so his deposition was taken in Florida. Atwell was given the right to have a psychiatrist present to observe Clark with reference to his mental competency to testify. Such psychiatrist, a Dr. Schwartz, together with a psychiatrist on behalf of appellants, did attend the taking of the deposition. Prior to trial, the court held a preliminary hearing as to the competency of Clark to testify at the forthcoming trial. The court had before it Clark's deposition with particular reference to the psychiatric examination part of it. Dr. Schwartz testified on behalf of the third-party defendant. There were no other witnesses. At the conclusion of the hearing the court stated:

" * * * this is merely a preliminary hearing for me as the judge to determine whether the testimony of Mr. Clark is competent—in other words, whether it should go before the jury.

"I am satisfied in my mind, Mr. Devine, without any question—without any question—and I am reinforced by the doctor's testimony that it is competent to go before the jury.

"I think he was very lucid. I think he repeated a lot of things that I can't even recall.

"I looked at the notes of testimony. This has been two years ago and here he didn't know who was the doctor, he didn't know who was the lawyer. He didn't know even why he was there or why he was being interrogated.

"Any person ordinarily would have been frightened, would have been concerned, but I am satisfied as a matter of law that the evidence of Mr. Clark is competent in this case.

"Now, then, Mr. Devine, I have ruled that it will go before the jury.

"Now the weight or the effect will be for the jury.

"It will be very proper for you to recall Dr. Schwartz and ask the question that you just did and the doctor will say it might be or it might not be and we will see what the jury would think.

"You understand the problem, Doctor.

"The Witness: Yes, sir.

"The Court: It is like you make a decision as to whether somebody ought to have treatment, so you decide that he should have treatment. I decide that the jury should hear Mr. Clark's testimony.

"Now what they do with it after they hear Dr. Schwartz and Dr. Dillon, I will say has to do with credibility."

At the trial plaintiffs' only testimony was the Clark deposition. In it Clark. stated that after he received Sadler's letter rejecting him because of information Sadler had received, he telephoned Sadler on November 5, 1957 regarding it and asked Mr. Sadler "who could give you * * * any kind of information that would make it impossible for us to offer you a position." Clark said Sadler replied, "Why your old friend, your friend, your friend Geiger." Sadler, as a witness, flatly denied making any such statement or that he mentioned Geiger's name to Clark.

The court gave the jury three interrogatories to answer. The first one was "Do you find that defendant Atwell, Vogel & Sterling, Inc. promised to keep the answer of Mr. Geiger a matter of strictest confidence?" The court instructed the jury to answer that "Yes", which the jury did. The second question was "Do you find that Mr. Sadler, acting for the Atwell firm, broke that promise and revealed the source of an unfavorable reference to Mr. Clark?" The jury's answer was "No".

The third interrogatory was "If you find that Mr. Sadler revealed to Mr. Clark the source of the letter and breached the contract, do you find that the disclosure caused the damage claimed by Mr. Geiger and the New Amsterdam?" The court instructed the jury that if its answer to #2 was "No", "That is the end of the case". However, the jury also answered this question "No" which was properly treated by the district judge as surplusage. In accordance with the answers to the interrogatories, judgment was entered in favor of the defendant, Atwell, Vogel & Sterling, Inc. and against the plaintiffs, Charles Geiger and New Amsterdam Casualty Co.

The primary trial question was whether appellee had disclosed the source of appellants' most unfavorable reference letter to it concerning Herbert Clark, contrary to its admitted agreement to keep it confidential. Sadler, who handled the transaction for appellee, after he received appellants' letter, wrote Clark on November 4, 1957, withdrawing the offer of employment to him, saying:

"* * * Unfortunately and to my sincere regret, we today received a reply to our letter of inquiry on one of your references and this reply gives us information which makes it impossible for us to offer you a position with our firm * * *."

Sadler testified that Clark, in connection with his application for employment, "* * * gave two personal references, but only one business reference." The New Amsterdam was that sole business reference. As we have seen, Sadler denied that in his telephone conversation with Clark he divulged the source of the information on which he based his letter of November 4th or that he had mentioned Geiger's name.

On cross-examination appellants desired to query him regarding his interoffice memoranda relating to Clark's application for employment of November 7, 1957 and June 11, 1958. The requests were denied, the memoranda were marked for identification and are before us. In the one of November 7, 1957, two days after Clark had telephoned him he said:

"Naturally in view of this report I immediately wrote Clark that we could not hire him, but last night he phoned me long distance. He knew from the fact that I had advised him that his references were not too good, that Mr. Geiger was involved. He talked to me long distance for about thirty minutes again stressing the point that various other auditors including Jim Gallagher in the Roxboro Section of Philadelphia and Charles Minsler were two of the company auditors who had been having trouble with Mr. Geiger and once again he told me that he would do anything in the world do anything in the world to get the job, that he had to have it in order to make a living."

In the June 11, 1958 memorandum addressed to Mr. Atwell of his company, speaking of his letter of November 4, 1957 to Clark, he said:

"In reading over the file I note the paragraph in my letter of November 4th that I did state that we had received a reply to our letter of inquiry on one of his references which gave us information making it impossible for us to offer a position. While this paragraph gave no names of any kind, it now seems to have been ill-advised since by my inference he could assume that Mr. Geiger or someone else from New Amsterdam gave the information."

These statements by the representative of appellee who handled the Clark application and who wrote appellee's letter of November 4, 1957, which withdrew appellee's offer of employment, may well be important admissions against interest by appellee. There is no indication in the record that they were beyond the scope of Sadler's company authority. Certainly they were contradictory of the overall effect of his testimony regarding his letter to Clark and his telephone talk with the latter. Conceivably their use could have even resulted in a change by the witness in his stated view of the said overall effect of his evidence dealing with both his letter and his telephone talk with Clark. Beyond doubt, appellants were substantially harmed by the rulings refusing cross-examination on the memoranda.

At the time of appellants' application to take Clark's deposition, it was opposed by appellee with the alternative request that if allowed, Clark should be required to be examined by a psychiatrist first. The deposition was authorized with the defense being given the right to have a psychiatrist present to observe the witness' mental state on the point of competency to testify. In accord with this, defense counsel asked the witness preliminary psychiatric questions prepared by the defense psychiatrist, Dr.

Schwartz. As has been noted, thereafter the district judge passed upon that testimony and found Clark competent to testify. He also held that Dr. Schwartz and Dr. Dillon would be allowed to testify as to Clark's credibility.

At the trial the entire psychiatric examination of Clark was read to the jury and into the record as part of the deposition of the witness. The questions were all directed to the problem of whether Clark possessed sufficient mental competency to appear as a witness in the suit. They had nothing to do with the factual circumstances of the cause of action. The objection of the third-party plaintiffs to the reading of this material was duly noted. The psychiatric examination comprises twenty-two pages of the printed record. Samples of the questions asked are "Can you tell me why the seasons change?"—"I will tell you a little story and ask you to tell it back to me. * * * A cowboy from Arizona went to San Francisco with his dog. He stopped at the house of a friend in San Francisco and left his dog there. The cowboy then went out and bought a new suit of city clothes. When he went back to his friend's house, the faithful dog didn't recognize him and wouldn't have anything to do with him. No matter how the cowboy coaxed and petted the dog, it wouldn't have a thing to do with him. So, the cowboy went upstairs and took off the city clothes and put on the cowboy clothes and then the dog recognized him and was friendly to him."—"Mr. Clark, if you were walking down a street and came to a corner and saw a mail box, let us suppose that you saw on the street an envelope which was sealed and addressed and stamped. What would you do with it?"—"You have heard the expression a rolling stone gathers no moss? A. Yes. Q. What does that mean to you?"—"Did you ever tell anybody that Mr. Geiger had given that car to you to kill you?"—"Did you tell Dr. Dillon New Amsterdam had hired people to force you off the road?"—"Do you dream at night, Mr. Clark? * * *

Do you ever have the same dream recur?"

Appellants stress that the above questions and all of the psychiatric interrogation were solely on the question of Clark's competency to testify; that the court, evaluating the questions and answers thereto had found Clark competent. The judge refused to allude in his charge to the fact that he had ruled Clark competent to testify, saying:

"I have said to them [the jury] that they have heard the evidence, so that they are not interested in my ruling as to the competency. They are only interested in my ruling as to the credibility and I have said it in my charge."

Having thoroughly in mind that Clark's competency to testify had been completely disposed of in the pretrial proceeding and that whatever evidence the doctors gave with reference to his mental condition went only to his credibility, the reading of that psychiatric examination of Clark to the jury as an integral part of Clark's testimony was prejudicial error. Coupled with the testimony of the psychiatrists, it may have seriously affected the jurors' judgment of whether Clark was competent to tell them what actually was said in his telephone talk with Sadler.

The testimony of Dr. Dillon and Dr. Schwartz, though containing language which might be argued to the jury by counsel, was, as we see it, admissible within the discretion of the trial judge. Appellants also strongly urge that the court should have granted their request to charge that the jury could infer from appellee's letter of November 4, 1957 in connection with all the other evidence, that Geiger was the writer of the reference letter. We think that this also was a subject for counsels' comment to the jury and not for the court to attempt to frame an issue based upon it as a matter of law.

The judgment of the district court will be reversed and the case remanded for a new trial on the merits.